UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**VITAL PHARMACEUTICALS, INC.,**
d/b/a VPX Sports, a Florida corporation,

       Plaintiff,

v.

**MONSTER ENERGY COMPANY**,
a Delaware corporation, and
**REIGN BEVERAGE COMPANY, LLC**,
a Delaware limited liability company,

       Defendants.

_____/

### COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, Vital Pharmaceuticals, Inc., d/b/a VPX Sports ("VPX") hereby sues Defendants, Monster Energy Company ("Monster") and Reign Beverage Company, LLC ("Reign Beverage"), and states:

### INTRODUCTION

1.    This action is about Monster and its affiliate Reign Beverage's intentional infringement of VPX's well-known BANG® energy drinks, both brands depicted below.



2.     As clearly visible from the shelves of the foregoing refrigeration cooler, Monster and Reign Beverage have launched a knockoff brand—called REIGN—to shamelessly copy and cause consumer confusion with VPX's popular BANG® brand of energy drinks.  Neither Monster nor Reign Beverage owns the REIGN® trademark.  In fact, VPX is the *exclusive* licensee of this trademark, which has been registered with the U.S. Patent and Trademark Office ("USPTO") since December 27, 2016.  Moreover, while Monster pays lip-service to "differentiation" in this industry; i.e., "making [Monster's] brands and products visually appealing and distinctive from other beverages on the shelves of retailers" (Monster 2018 10-K), it has done the exact opposite here.  REIGN is *nearly identical* and *confusingly similar* to VPX's own aesthetically appealing and distinctive trade dress for BANG®, and also copies the phrase "body fuel" from VPX's trademarked tagline, "Potent Brain and Body Fuel."

3.     Competition law places reasonable limits on the proverbial expression "imitation is the sincerest form of flattery."  Flattery aside, Defendants' blatant *infringement* of VPX's distinctive trade dress and their *unauthorized* use of the REIGN® trademark and the tagline, "Potent Brain and Body Fuel," unlawfully encroach upon any acceptable notion of fair competition.  VPX brings this complaint for damages and injunctive relief against Defendants for federal trade dress infringement; federal trademark infringement; federal unfair competition; common law trade dress infringement and unfair competition; common law trademark infringement; and misleading and deceptive trade practices in violation of the Florida Deceptive and Unfair Trade Practices Act.

### THE PARTIES

4.     VPX is a Florida corporation with its principal place of business in Weston, Florida.

5.     Monster is doing business in Florida and is believed to be a Delaware corporation with its principal place of business in Corona, California, and to act as Reign Beverage's sole

member.

6.      Reign Beverage is doing business in Florida and is believed to be a Delaware limited liability company with its principal place of business in Los Angeles, California, and lists Monster as its sole member.

7.      Monster and Reign Beverage are believed to have common control, ownership, employees, or agents, including employees or agents who reside or may be found in the Southern District of Florida.

8.      Monster is believed to fully support or control Reign Beverage for all purposes relevant to the claims in this action.

**JURISDICTION**

9.      VPX brings this action against Defendants for injunctive and other relief under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, particularly 15 U.S.C. §§ 1114 and 1125(a), for trade dress infringement, trademark infringement, and unfair competition.   VPX also asserts claims in accordance with common law rights, Fla. Stat. § 495.161, for trade dress infringement, unfair competition, and trademark infringement, and, separately, for violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501. 201, *et seq.* ("FDUTPA").

10.      Subject matter jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1338(b).  This Court also has subject matter jurisdiction pursuant to 15 U.S.C. § 1121; the doctrine of supplemental jurisdiction, as set forth in 28 U.S.C. § 1367; and 28 U.S.C. § 1332(a)(1), because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

11.      Personal jurisdiction over Defendants Monster and Reign Beverage is proper because:

        a.      Monster and Reign Beverage have operated, conducted, engaged in, or

carried on a business venture in this State and the Southern District of Florida, including the sale of the infringing REIGN energy drinks from which this action arises, within the meaning of Fla. Stat. § 48.193(1)(a); or

       b.    Monster and Reign Beverage have committed tortious acts within this State and the Southern District of Florida, including the infringement and unfair competition set forth herein, within the meaning of Fla. Stat. § 48.193(1)(b), and with knowledge that their tortious acts would be felt by VPX in this judicial district; or

       c.    Monster and Reign Beverage have engaged in substantial and not isolated activity within this State and the Southern District of Florida, within the meaning of Fla. Stat. § 48.193(2).

**VENUE**

12.    Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(c)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and a substantial part of property that is the subject of the action; i.e., the infringing REIGN energy drinks, are situated, distributed, and available for sale in this judicial district, and are sold to and consumed by consumers located in this judicial district; or 28 U.S.C. § 1400(a), because Monster and Reign Beverage have employees or agents who reside or may be found in this judicial district.

**FACTUAL BACKGROUND**

**Plaintiff VPX**

13.    VPX is a leading manufacturer, distributor, and seller of fitness-focused energy drinks and dietary and sports nutritional supplements in the United States and abroad.  VPX was founded in 1993 and later incorporated in May 1996.  Since then, VPX has invested a significant amount of time, effort, and financial resources promoting, marketing, and advertising its BANG®,

REDLINE®, and REDLINE XTREME® brands, among other renown brands of products, which are among the best-selling energy drinks and sports nutrition products in the industry.  Given the success of VPX's marketing efforts and the high quality of its products, VPX and its registered marks, distinctive trade dresses, and catchy taglines have become widely known, and represent substantial, valuable goodwill to VPX.

14.     For well over a decade, from its headquarters in the Southern District of Florida, VPX's products have been distributed and sold nationwide to a wide range of customers, including bottlers, full-service beverage distributors, retail grocery and specialty chains, wholesalers, club stores, mass merchandisers, convenience stores, foodservice customers, such as Publix, Albertsons, Kroger, Wal-Mart, Walgreens, and 7-Eleven, and U.S. military bases, as well as gyms and leading retailers of sports-related supplements, vitamins, and other health, wellness, and fitness products, such as GNC and The Vitamin Shoppe, and via online retailers such as Amazon.com, bodybuilding.com, vitacost.com, and tigerfitness.com.

**Plaintiff VPX's BANG® Trademark, Energy Drinks, Trade Dress, and Tagline**

15.     JHO Intellectual Property Holdings, LLC ("JHO") owns the BANG® trademark, which was registered with the USPTO on December 9, 2008, U.S. Registration No. 3,545,129, for nutritional supplements and ready-to-drink nutritionally fortified beverages (the "BANG® Trademark"), and owns the trademarked tagline, "Potent Brain and Body Fuel."

16.     VPX is the exclusive licensee of all of the intellectual property rights for BANG®, including the BANG® Trademark, the tagline, "Potent Brain and Body Fuel," the BANG® Trade Dress (defined below in ¶ 20.f), the Family of BANG® Trade Dress (defined below in ¶ 21), and all other related trademarks and trade dress, including the right to sue third parties for infringement of the BANG® Trademark without the necessity of adding or joining JHO as a party.

17.     VPX's first use of the BANG® Trademark dates back to as early as September 26,

2008.

18.    BANG® energy drinks are sugar-free, zero-calorie, carbonated energy drinks containing, among other ingredients, Super Creatine®, branched-chained amino acids ("BCAAs" or, as coined by VPX, "BCAA Aminos"), and the coenzyme Q10 ("COQ10"). BANG® energy drinks are sold in 16-ounce aluminum cans. Unlike most energy drinks in the beverage industry, BANG® energy drinks contain no sugar or calories, as noted, as well as no carbohydrates ("carbs"), or artificial colors.

19.    BANG® energy drinks are designed as a high-quality, great-tasting beverage for healthy, adult consumers, including fitness-focused consumers. VPX uses the tagline, "Potent Brain and Body Fuel," for its BANG® brand of caffeinated energy drinks.

20.    The unique appearance of VPX's BANG® energy drinks is recognizable as the style, work, and trade dress of VPX, and as visually appealing and distinctive from all other energy drinks and beverages on the shelves of retailers. Specifically, VPX's trade dress consists of an overall look and feel resulting from the distinctive combination of the following non-functional features on a 16-ounce black aluminum can:

        a.    a black background with a contrasting, flavor-dependent, bold, brightly-colored design for the rest of the can;

        b.    a large, stylized "b" logo in the same bold, bright color(s) as the rest of the color(s) on the can, covering the top portion of the primary panel of the can;

        c.    the performance ingredients "BCAA AMINOS," "SUPER CREATINE®" and "ULTRA COQ10" in all capital letters going around the rim of the top of the can;

        d.    the product name "bang" in a stylized font in the same bold, bright color(s) as the rest of the color(s) on the can, covering the bottom portion of the primary panel of the can;

        e.    the tagline, "POTENT BRAIN AND BODY FUEL," in contrasting

white/silver immediately below the product name "bang," covering the bottom portion of the can; and

      f.     the flavor-designation in all capital letters in the same bold, bright color(s) as the rest of the color(s) on the can, appearing below the tag line in the bottom portion of the can (all such features a. through f. referred to hereinafter collectively as the "BANG® Trade Dress"). The BANG® Trade Dress for one of VPX's flavors, Cotton Candy, is depicted below.



21.    BANG® energy drinks are sold in over 20 different flavors, including the following flavor/color combinations:  Cotton Candy (depicted above) in light-pink; Peach Mango in scarlet-red/neon-green; Purple Guava Pear in yellow/purple; Blue Razz® in baby-blue; Lemon Drop™ in yellow; Sour Heads™ in neon-green; Cherry Blade Lemonade™ in red/neon-green; Power Punch™ in dark-pink; Black Cherry Vanilla™ in dark-red; Purple Haze™ in purple; Star Blast® in blue/red; and many other flavors as listed on VPX's website, www.bang-energy.com (all such different flavors of BANG® energy drinks referred to hereinafter collectively as the "Family of BANG® Trade Dress").[1]

---

[1]    *See* VPX/BANG Energy, https://bang-energy.com/ (follow "Products" drop-down, then "BANG" hyperlink, then "BANG® - 12 Pack" hyperlink, then "Pick Flavor" drop-below) (listing all of the flavors of BANG® energy drinks).

22.     The BANG® Trade Dress is inherently distinctive and nonfunctional.

23.     VPX's trade dress rights in the BANG® Trade Dress date back to as early as October 2015, and VPX has used its distinctive BANG® Trade Dress in interstate commerce since then.

24.     VPX has used the term "body fuel" in its tagline, "Potent Brain and Body Fuel," since VPX launched its BANG® brand of carbonated energy drinks in October 2012.

25.     Similarly, VPX has distributed and sold its BANG® carbonated energy drinks nationwide since as early as October 2012 to a wide range of customers, including bottlers, full-service beverage distributors, retail grocery and specialty chains, wholesalers, club stores, mass merchandisers, convenience stores, foodservice customers, such as Publix, Albertsons, Kroger, Wal-Mart, Walgreens, and 7-Eleven, and U.S. military bases, as well as gyms and leading retailers of sports-related supplements, vitamins, and other health, wellness, and fitness products, such as GNC and The Vitamin Shoppe, and via online retailers such as Amazon.com, bodybuilding.com, vitacost.com, and tigerfitness.com.

26.     VPX has spent significant amounts of time and effort promoting its BANG® energy drinks featuring the BANG® Trade Dress.

27.     Likewise, VPX has spent millions of dollars marketing, advertising, and promoting its BANG® energy drinks featuring the BANG® Trade Dress.

28.     VPX markets, advertises, and promotes its BANG® energy drinks featuring the BANG® Trade Dress extensively on the Internet, including on its website, www.bang-energy.com, its retailers' websites, and on social media platforms such as Instagram (@bangenergy), Twitter (@BANGenergy), and Facebook (@BANGenergy).

29.     VPX also markets, advertises, and promotes its BANG® energy drinks featuring the BANG® Trade Dress on apparel and swag, as well as on a fleet of specially-customized

vehicles used to promote the BANG® energy drink, as depicted below.



*See also* VPX VPX/Bang Energy, https://bang-energy.com/ (follow "Apparel" drop-down).

30.     In addition, VPX utilizes social media influencers and ambassadors to promote its BANG® energy drinks featuring the BANG® Trade Dress on numerous social media platforms, including Instagram, Twitter, Facebook, and Triller.   VPX's social media presence via these influencers and ambassadors presently reaches over 235,000,000 people.

31.     BANG® energy drinks featuring the BANG® Trade Dress have enjoyed tremendous third-party recognition and popularity.   For example, VPX's Instagram account (@bangenergy) currently has approximately 500,000 third-party followers and, in the last seven (7) days alone, has received over 225,000 visits.

32.     These third-party followers and others, including celebrities and public figures, refer to BANG® energy drinks featuring the BANG® Trade Dress extensively on social media and

in the general media.

33.     VPX also markets its BANG® energy drinks at sporting events such as the Super Bowl; music festivals such as Life in Color and Ultra Music Festival; sports nutrition trade shows such as Arnold Fitness Expo, Olympia Fitness & Performance Expo, and Europa Games Get Fit & Sports Expo; and beverage trade shows such as NACS and Expo West.  At these events and trade shows, VPX typically has a large booth and a stage, where it hosts a "party" and performance featuring, among other things, a live dee-jay, product giveaways, dancing by BANG® fitness models and dancers who are dressed in fitness clothing featuring the distinctive BANG® logo, and fitness competitions.  Just last month in February 2019, at the Arnold Fitness Expo in Columbus, Ohio, VPX sent approximately 150 employees, BANG® fitness models and dancers, and social media ambassadors and influencers to promote VPX's BANG® energy drinks.  Celebrity, former Governor of California, renown fitness enthusiast, and former fitness competitor and the very reason for the annual fitness competition called the "Arnold" (named after him), Arnold Schwarzenegger came by VPX's booth and stage, where he took a video selfie in the audience with numerous BANG® fitness models and dancers, and other attendees at VPX's booth, and posted it on social media.

34.     BANG® energy drinks have experienced tremendous sales growth since VPX's launch of the product, with extraordinary growth in the last year alone.

35.     According to recent U.S. sales data from a third-party market-research company, BANG® energy drinks are now the nation's *third (3rd)* best-selling sugar-free energy drink and *fifth (5th)* best-selling energy drink overall, with a market share increase of 887% in the most recent 52-week period.

36.     BANG® energy drinks have received extensive, unsolicited third-party commentary via articles written about the brand's unprecedented success and have been featured

in YouTube videos taken and uploaded by unsolicited third parties.

37.     As a result of VPX's foregoing marketing, advertising, promotional efforts, sales, and third-party recognition, BANG® energy drinks have developed a significant amount of goodwill and secondary meaning, and the consuming public has come to associate the BANG® Trade Dress, the BANG® Trademark, and the BANG® tagline solely with VPX.

38.     Unfortunately, others in the industry such as Defendants Monster and Reign Beverage, rather than relying on their own products, trade dress, and taglines, have taken to copying VPX's BANG® trade dress, trademark, and tagline in an effort to compete and cause consumer confusion with VPX's rapidly growing brand of BANG® energy drinks.

**Plaintiff VPX's REIGN® Trademark**

39.     By way of a valid trademark assignment, JHO owns the REIGN® trademark, together with the goodwill associated therewith, which was registered with the USPTO on December 27, 2016, U.S. Registration No. 5,107,809, for dietary and nutritional supplements, dietary supplement drink mixes, herbal supplements, and nutraceuticals for use as a dietary supplement (the "REIGN® Trademark").   A true and correct copy of the registration for the REIGN® Trademark is attached as Exhibit "A" hereto.   The registration is valid, has not been revoked, and has not been cancelled.   A copy of the notice of assignment of the REIGN® Trademark, duly-recorded by the USPTO on March 14, 2019, is attached as Exhibit "B" hereto.

40.     VPX is the exclusive licensee of the REIGN® Trademark and has the exclusive right to sue third parties for infringement of the REIGN® trademark without the necessity of adding or joining JHO as a party.

41.     The REIGN® Trademark has been in continuous use in interstate commerce since February 1, 2015.   VPX uses the REIGN® Trademark on and in connection with ready-to-drink dietary supplements, namely pre-workout energy drinks, as depicted below.

11



42.     To date, VPX is aware of at least two (2) instances of actual confusion between Defendants' use of REIGN and VPX's trademark rights in the REIGN® Trademark.

**Defendant Monster**

43.     Defendant Monster is a subsidiary of Monster Beverage Corporation, which is publicly-traded and refers to itself and its subsidiaries as a collective entity "unless the context otherwise requires."  *See* Monster Beverage Corporation, Form 10-K 2018 ("Monster 2018 10-K") (Part I, Item 1), at 3,

https://www.sec.gov/Archives/edgar/data/865752/000110465919011581/a19-30117_110k.htm

(last visited Mar. 28, 2019).

44.     Monster markets, distributes, and sells energy drink beverages under numerous brands, including its flagship energy drink "Monster Energy" containing 52 grams of sugar.  *Id.*

12

45.     Monster competes against VPX in the beverage industry, which includes energy drinks, ready-to-drink dairy drinks, and sports drinks.  *Id.* at 4.

46.     While Monster touts itself as being a nationwide leader in the business of energy drinks and as the best-selling energy drink brand in the United States by unit volume, Monster has been losing significant market share to VPX at a constant clip.

47.     Monster also has a long history of resorting to duplicitous tactics aimed at damaging and disparaging VPX, its BANG® energy drinks, and even its founder and CEO, Jack Owoc, individually, to cope in vain with the increasing popularity of VPX.

48.     For example, in 2008, Monster's predecessor, Hansen Beverage Company, brought a frivolous lawsuit against VPX for alleged "false and misleading" statements regarding VPX's REDLINE® brand of energy drinks in an action styled, *Hansen Beverage Company v. Vital Pharmaceutical, Inc. [sic]*, Case No. 08-cv-01545 (S.D. Cal. filed Aug. 21, 2008).[2]  The court denied Monster's motion for a preliminary injunction, and the lawsuit was eventually dismissed in VPX's favor.  *Id.* (Dkt. Nos. 33 and 217).

49.     In addition, just last year in September, Monster brought an equally frivolous lawsuit against VPX for alleged "false and misleading" statements regarding VPX's BANG® brand of energy drinks in an action styled, *Monster Energy Company v. Vital Pharmaceuticals, Inc. and John H. Owoc*, Case No. 5:18-cv-1882 (C.D. Cal. filed Sept. 4, 2018).  Monster's true intent in bringing the lawsuit, however, appears to have been to incite serial class action plaintiffs' attorneys to bring copycat suits against VPX, as reflected by extrajudicial statements about the suit publicly disseminated in bad faith by Monster's lead attorney upon the suit's filing.  *Id.* (Dkt. No. 15 at ¶ 40).  Monster's same lead attorney, Marc P. Miles, Esq., and its entire lead law firm, Shook,

---

[2]     Hansen Beverage Company's parent, Hansen Natural Corporation, changed its name to Monster Beverage Corporation in 2012.  *See* Monster 2018 10-K (Part I, Corporate History) at 5.

Hardy & Bacon, L.L.P., were promptly disqualified from the lawsuit based on an ethical conflict given Miles' representation of VPX against Monster in the 2008 action (referenced above in ¶ 48). *Id.* (Dkt. No. 31).

50.    Out of the courtroom, Monster has mounted an online smear campaign, buoyed by a sham website and social media/online marketers, attempting to defame and disparage VPX's BANG® energy drinks and CEO, Jack Owoc.  Monster's such smear campaign is already the subject of a formal cease and desist notice for defamation, copyright infringement, disparaging conduct, and unfair trade practices.  While this smear campaign is not directly at issue in the present action, it is yet another example of Monster's bad faith, anti-competitive, and sleazy tactics targeting VPX and attempting to confuse consumers.

**Defendant Reign Beverage**

51.    Reign Beverage appears to have been organized as a Delaware limited liability company on October 3, 2018, and lists Monster as its sole member.

52.    In every practical sense, Reign Beverage is fully supported and controlled by Monster and Monster's Chairman and CEO, Rodney C. Sacks.

53.    For example, in October 2018, Monster filed U.S. trademark applications for the REIGN trademarks.  In addition, Reign Beverage's application to register a foreign limited liability company in California, filed in November 2018, is signed by Sacks.

54.    Sacks also has publicly decreed Monster's "full support" and control of Reign Beverage in all relevant commercial phases, including brand development, marketing, sales, and distribution.  *See, e.g.,* Eric Schroeder, *It's time for Reign at Monster*, Food Business News, Jan. 18, 2019, https://www.foodbusinessnews.net/articles/13174-its-time-for-reign-at-monster (attached as Exhibit "C" hereto).

55.    The only "competitor" identified by Sacks in the foregoing article is "Bang," which

Sacks views to be Monster's "main competitor." *See id.* (Ex. "C" hereto). *See also* Martin Caballero, *Monster Reveals 'Performance' Energy, Tea Innovations*, BEVNET, Jan. 18, 2019, https://www.bevnet.com/news/2019/monster-reveals-performance-energy-tea-innovations (Sacks comparing REIGN to a single product, "Bang," which, according to Sacks, is Monster's "main competitor") (attached as Exhibit "D" hereto).

56.     Indeed, it is common knowledge in the beverage industry and otherwise that Monster launched REIGN to specifically target VPX's BANG® energy drinks and compete directly with VPX in the fitness-oriented energy drink space. *See, e.g.,* Martin Caballero, *Monster Reveals 'Performance' Energy, Tea Innovations*, BEVNET (Ex. "D" hereto); Martin Caballero, *Wells Fargo: Competition, Volume Drops Hurting Monster*, BEVNET, Mar. 21, 2019, https://www.bevnet.com/news/2019/wells-fargo-competition-volume-drops-hurtingonster?utm_source=BevNET.com%2C+Inc.+List&utm_campaign=7c40d72662-mailchimp&utm_medium=email&utm_term=0_f63e064108-7c40d72662-169212137   (attached as Exhibit "E" hereto); Steve Holtz, *Will Monster Reign With Newest Product Rollout?*, CSP Daily News, Jan. 29, 2019, https://www.cspdailynews.com/beverages/will-monster-reign-newest-product-rollout (attached as Exhibit "F" hereto).

**Defendants' Unauthorized Use of the REIGN® Trademark**

57.     Monster is the owner of the following intent-to-use applications filed with the USPTO:

| **Mark** | **Serial No.** | **Goods** |
| --- | --- | --- |
| REIGN FUEL | 88/175,257 | 005 - Energy drinks; Soft drinks |
| REIGN PERFORMANCE ENERGY | 88/118,353 | 005 - Energy drinks; Soft drinks |
| REIGN PERFORMANCE FUEL | 88/175,276 | 005 - Energy drinks; Soft drinks |

| REIGN PERFORMANCE | 88/175,248 | 005 - Energy drinks; Soft drinks |
| REIGN ENERGY | 88/120,065 | 005 - Energy drinks; Soft drinks |

58.     Reign Beverage, on the other hand, is the owner of the following intent-to-use applications filed with the USPTO:

| **Mark** | **U.S. Serial No.** | **Goods** |
| --- | --- | --- |
|  | 88/325,087 | 032 - Fitness Beverages |
|  | 88/325,082 | 032 - Fitness Beverages |
|  | 88/207,168 | 032 - Fitness Beverages |
|  | 88/207,138 | 032 - Fitness Beverages |
| REIGN TOTAL BODY FUEL | 88/188,844 | 032 - Fitness Beverages |

59.     Defendants have used the REIGN® Trademark on the Infringing REIGN Product (defined below in ¶ 70) in interstate commerce in the Southern District of Florida and on REIGN's website, https://reignbodyfuel.com, targeting citizens residing in this judicial district.

60.     Defendants' adoption of the REIGN® Trademark on the Infringing REIGN Product (defined below in ¶ 70) and Defendants' advertising of the REIGN® Trademark to Florida residents was done intentionally, with at least constructive knowledge of U.S. Registration No. 5,107,809

16

for REIGN®, for which trademark, again, VPX is the exclusive licensee and has all substantial rights thereunder, including the present enforcement rights.

61.     VPX has not authorized—and does not authorize—Defendants' adoption or use of the REIGN® Trademark.

**Defendants' Infringing REIGN Product**

62.     Monster pays lip-service to "differentiation" in the beverage industry, indicating "that one of the keys to success in the beverage industry is differentiation, making [Monster's] brands and products visually appealing and distinctive from other beverages on the shelves of retailers." *See* Monster 2018 10-K (Part I, Item 1, Sales and Marketing), at 13.

63.     Yet, Defendants' REIGN brand and products are the antitheses of differentiation.

64.     Monster's flagship energy drink brand (Monster Energy) is depicted below.



65.     Under the family of Monster brands, Monster energy drinks have several different extensions and flavors, such as regular Monster Energy (including Lo-Carb, Assault, and Absolutely Zero), Monster Rehab (which is tea-based); Monster Energy Zero Ultra (which is "less sweet, lighter-tasting, zero-calories," and available in Zero, Blue, Red, Sunrise, Citron, Black, Violet, and Paradise); Juice Monster (which is juice-based and available in Khoas, Pipeline Punch,

Pacific Punch, Ripper, and Mango Loco); Punch Monster (which is "sweet . . ., but with a little carbonation," and available in Baller's Blend and Mad Dog); and Java Monster (which is coffee-based and available in various flavors, including Mean Bean, Loca Mocha, and Kona Blend).  *See* Monster 2018 10-K (Part I, Item 1, Business), at 3-4; Monster, https://www.monsterenergy.com/us/en/products/monster-energy (last visited Mar. 28, 2019).

66.    A sampling of Monster's family of energy drinks is depicted below.



67.    Monster's foregoing energy drink brands, including its regular sugar-laden version, sugar-free version, and other specialty versions, all feature the product name "Monster" and the "M" claw logo.

68.    In addition to Monster's brands operating under the product name "Monster" and the "M" claw logo, Monster operates under a separate segment referred to by Monster as its "Strategic Brands" segment, "which is comprised primarily of the various energy drink brands acquired from The Coca-Cola Company [] in 2015 . . .."  *See* Monster 2018 10-

K (Part I, Item 1, Business), at 4.  Monster's "Strategic Brands" include the following energy drinks:  Burn; NOS; Full Throttle; Relentless; and Mother.  *Id.* at 7.

69.     These "Strategic Brands" are depicted below, together with, again for comparison purposes, the flagship Monster Energy brand, respectively:



70.     Tellingly, *after* BANG® energy drinks started experiencing extensive social media attention and record-breaking sales, Monster and Reign Beverage began promoting REIGN energy drinks (hereinafter, the "Infringing REIGN Product").

71.     The Infringing REIGN Product also infringes VPX's trademarked tagline, "Potent Brain and Body Fuel," by including "body fuel" in the Infringing REIGN Product's tagline, "Total Body Fuel."

72.     Perhaps most alarmingly, the Infringing REIGN Product looks *nothing* like the array of energy drinks in Monster's portfolio of Monster Energy brands and Strategic Brands; rather, it is *nearly identical* and *confusingly similar* to VPX's BANG® energy drinks, depicted in a comparison of the corresponding flavors below.

**Infringing REIGN Product**

     

vs.

**Corresponding BANG® Energy Drinks**

     

73.     Specifically, the design of the Infringing REIGN Product contains the following non-functional features on a 16-ounce black aluminum can that are the same or confusingly similar to the BANG® Trade Dress:

a.      a black background with a contrasting, flavor-dependent, bold, brightly-colored design for the rest of the can;

b.      a large, stylized logo in the same bold, bright color(s) as the rest of the color(s) on the can, covering the same top portion of the primary panel of the can as covered by the logo appearing on VPX's BANG® cans;

c.      performance ingredients in all capital letters going around the rim of the

20

top of the can, including the same unique term for BCAAs used by VPX on its BANG® cans; i.e., "BCAA AMINOS";

       d.    the product name "reign" in a stylized font in the same bold, bright color(s) as the rest of the color(s) on the can, covering the same bottom portion of the primary panel of the can as covered by the product name "bang" appearing on VPX's BANG® cans;

       e.    the tagline, "TOTAL BODY FUEL," in contrasting white/silver immediately below the product name, covering the same bottom portion of the can as covered by the tagline used by VPX on BANG® cans; i.e., "POTENT BRAIN AND BODY FUEL"; and

       f.    the flavor-designation in all capital letters in the same bold, bright color(s) as the rest of the color(s) on the can, appearing below the tag line in the same bottom portion of the can as used by VPX for the flavor-designation on its BANG® cans (all such features a. through f. referred to hereinafter collectively as the "Infringing REIGN Trade Dress").

74.    The Infringing REIGN Product is offered in different flavor/color combinations, which are:  Carnival Candy in light-pink; Melon Mania in scarlet-red/neon-green; Peach Fizz in yellow/purple; Razzle Berry in baby-blue/purple; Lemon Hdz in yellow/baby-blue; and Sour Apple in neon-green/yellow (all such different flavors referred to hereinafter collectively as the "Family of Infringing REIGN Trade Dress").

75.    Separate from the confusingly similar design, the names and flavor/color combinations of the Infringing REIGN Product are confusingly similar to the corresponding names and flavor/color combinations of BANG® energy drinks.  A side-by-side comparison of the individual flavors of the Family of BANG® Trade Dress with the corresponding flavors of the Family of Infringing REIGN Trade Dress is depicted below:

a.     BANG® Cotton Candy vs. REIGN Carnival Candy:

 

b.     BANG® Peach Mango vs. REIGN Melon Mania:

 

c.     BANG® Purple Guava Pear vs. REIGN Peach Fizz:

 

d.       BANG® Blue Razz® vs. REIGN Razzle Dazzle:

 

e.       BANG® Lemon Drop® vs. REIGN Lemon Hdz:

 

f.       BANG® Sour Heads® vs. REIGN Sour Apple.

 

23

76.     Further, a side-by-side comparison of the Family of BANG® Trade Dress with the corresponding Family of Infringing REIGN Trade Dress as these products would appear to consumers in the marketplace on the shelves of a typical refrigeration cooler is depicted below.



77.    The Infringing REIGN Product launched domestically, including in the Southern District of Florida, on or about March 25, 2019.

78.    The Infringing REIGN Product is available for purchase throughout the United States, including in the State of Florida and in the Southern District of Florida, and, in fact, has been purchased by Florida citizens in this State and, in particular, this judicial district.

79.    VPX believes that the Infringing REIGN Product is being or will be distributed throughout Florida, including in the Southern District of Florida, through Monster's existing, extensive distribution network, either directly by Defendants or through distribution arrangements with third-party distributors and others, including "distribution coordination agreements" with The Coca-Cola Company ("TCCC") in which TCCC network bottlers will distribute the Infringing REIGN Product in Florida and elsewhere.  *See* Monster 2018 10-K (Part I, Item 1, Distribution Agreements), at 4, 10-11.

80.    Defendants' such distribution network for the Infringing REIGN Product includes the same retailers where BANG® energy drinks are currently or will be sold, such as retail grocery and specialty chains, wholesalers, club stores, mass merchandisers, convenience stores, foodservice customers, drug stores and the U.S. military, as well as health stores, health food stores, and vitamin stores.  *See, e.g.,* Schroeder, *It's time for Reign at Monster*, Food Business News (Ex. "C" hereto) (noting Sack's desire that the Infringing REIGN Product "go[] into health stores, health food stores, vitamin stores and the general stores," and other "expanded usage occasions and [] fulfillment of multiple need states").

81.    Absent injunctive relief, VPX will continue to suffer irreparable harm in the loss of control of its reputation and goodwill in its BANG® Trade Dress, REIGN® Trademark, and tagline, "Potent Brain and Body Fuel."

82.    This and all other damage to VPX's reputation and goodwill resulting from the

conduct alleged in this action cannot not be easily quantified nor could it be undone through an award of money damages alone.

83.    VPX has retained the undersigned attorneys to represent it in this matter.

84.    All conditions precedent to the institution and maintenance of this action have occurred or have been waived, excused, discharged, or performed.

<u>**COUNT I**</u>
**Trade Dress Infringement Under the Lanham Act, 15 U.S.C. § 1125(a)**
**(Against Both Defendants)**

85.    VPX incorporates the allegations in paragraphs 1 through 84 as if fully set forth herein.

86.    The BANG® Trade Dress is inherently distinctive and nonfunctional.

87.    The BANG® Trade Dress has acquired secondary meaning.

88.    Subsequent to VPX's establishment of its rights in the BANG® Trade Dress, Defendants intentionally commenced to use in commerce and, it is believed, will continue to use in commerce the Infringing REIGN Product.

89.    The Infringing REIGN Product is a reproduction, copy, and colorable imitation of the BANG® Trade Dress, despite VPX's prior use of the BANG® Trade Dress and the public recognition of the BANG® Trade Dress, constituting use in commerce of a word, term, name, symbol, or device, or combination thereof, or a false designation of origin, false or misleading description of fact, or a false or misleading representation of fact that is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association with VPX, or origin, sponsorship, or approval of the Infringing REIGN Product by VPX.

90.    Defendants' acts constitute unfair competition, false designation of origin, or false description or representation, of all such unlawful conduct, in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

91.     Defendants' use of the Infringing REIGN Trade Dress on the Infringing REIGN Product has infringed and continues to infringe VPX's rights in the BANG® Trade Dress.

92.     Defendants' use of the Infringing REIGN Trade Dress in connection with the sale, marketing, and distribution of the Infringing REIGN Product constitutes unfair competition because such use has caused, and is likely to continue to cause, actual confusion, mistake, and deception as to the origin of the Infringing REIGN Product and has misled, and is likely to continue to mislead, consumers and potential consumers into believing that the Infringing REIGN Product is affiliated with, or is sponsored, authorized, approved, or sanctioned by, VPX in violation of 15 U.S.C. § 1125(a).

93.     Defendants have engaged in this conduct knowingly, willfully, and in bad faith.

94.     Defendants' such conduct has caused and is causing VPX irreparable injury and monetary damages.

95.     Defendants' such conduct has harmed VPX's reputation and goodwill in the BANG® Trade Dress.

96.     Defendants' such conduct has caused and will continue to cause great and irreparable injury to VPX.

97.     Unless Defendants' such conduct is restrained by the Court, it will continue and VPX will continue to suffer great and irreparable injury.

98.     VPX has no adequate remedy at law.

## COUNT II
### Federal Trademark Infringement Under the Lanham Act, 15 U.S.C. § 1114
### (Against Both Defendants)

99.     VPX incorporates the allegations in paragraphs 1 through 84 as if fully set forth herein.

100.     VPX's is the exclusive licensee of the trademark for REIGN®, U.S. Registration No. 5,107,809, for dietary and nutritional supplements, dietary supplement drink mixes, herbal supplements, and nutraceuticals for use as a dietary supplement (the REIGN® Trademark).  This registration is valid and subsisting.

101.     Defendants had actual or constructive notice of U.S. Registration No. 5,107,809 (the REIGN® Trademark).

102.     Defendants' use of the REIGN® Trademark in connection with the advertisement, marketing, and sale of the Infringing REIGN Product is without VPX's consent.

103.     Defendants' unauthorized use of the REIGN® Trademark in connection with the sale, marketing, and distribution of the Infringing REIGN Product constitutes unfair competition because such use has caused, and is likely to continue to cause, actual confusion, mistake, and deception as to the origin of the Infringing REIGN Product and has misled, and is likely to continue to mislead, consumers and potential consumers into believing that the Infringing REIGN Product is affiliated with, or is sponsored, authorized, approved, or sanctioned by, VPX in violation of 15 U.S.C. § 1114.

104.     Defendants have engaged in this conduct knowingly, willfully, and in bad faith.

105.     Defendants' unlawful and willful conduct has caused and is causing VPX irreparable injury and monetary damages.

106.     Defendants' such conduct has caused and is causing VPX irreparable injury and monetary damages.

107.     Defendants' such conduct has harmed VPX's reputation and goodwill in the BANG® Trade Dress.

108.     Defendants' such conduct has caused and will continue to cause great and irreparable injury to VPX.

109.     Unless Defendants' such conduct is restrained by the Court, it will continue and VPX will continue to suffer great and irreparable injury.

110.     VPX has no adequate remedy at law.

## COUNT III
### Federal Unfair Competition Under the Lanham Act, 15 U.S.C. § 1125
### (Against Both Defendants)

111.     VPX incorporates the allegations in paragraphs 1 through 84 as if fully set forth herein.

112.     Defendants' use of the REIGN® Trademark and the tagline, "Total Body Fuel," in connection with the advertisement, marketing, and sale of the Infringing REIGN Product is without VPX's consent.

113.     Defendants' unauthorized use of the REIGN® Trademark falsely conveys to consumers that the Infringing REIGN Product is in some way connected with, sponsored by, affiliated or associated with, or related to VPX.

114.     Defendants' unauthorized use of the REIGN® Trademark and the tagline, "Total Body Fuel," in connection to the sale of the Infringing REIGN Product is also likely to cause consumers to be confused as to the source, nature, and quality of the products that Defendants are promoting and selling under the REIGN® Trademark and the tagline, "Total Body Fuel."

115.     Defendants' unauthorized use of the REIGN® Trademark and the tagline, "Total Body Fuel," in connection with the sale, marketing, and distribution of the Infringing REIGN Product constitutes unfair competition because such use has caused, and is likely to continue to cause, actual confusion, mistake, and deception as to the origin of the Infringing REIGN Product and has misled, and is likely to continue to mislead, consumers and potential consumers into believing that the Infringing REIGN Product is affiliated with, or is sponsored, authorized, approved, or sanctioned by, VPX.

116.    Defendants' such conduct constitutes unfair competition and introduction into commerce of a false designation of origin, or false description or representation of the origin or sponsorship, of the Infringing REIGN Product in violation of 15 U.S.C. § 1125(a).

117.    Defendants have engaged in this conduct knowingly, willfully, and in bad faith.

118.    Defendants' unlawful and willful conduct has caused and is causing VPX irreparable injury and monetary damages.

119.    Defendants' such conduct has caused and is causing VPX irreparable injury and monetary damages.

120.    Defendants' such conduct has harmed VPX's reputation and goodwill in the BANG® Trade Dress.

121.    Defendants' such conduct has caused and will continue to cause great and irreparable injury to VPX.

122.    Unless Defendants' such conduct is restrained by the Court, it will continue and VPX will continue to suffer great and irreparable injury.

123.    VPX has no adequate remedy at law.

**COUNT IV**
**Florida Common Law Trade Dress Infringement and Unfair Competition**
**(Against Both Defendants)**

124.    VPX incorporates the allegations in paragraphs 1 through 84 as if fully set forth herein.

125.    Defendants' conduct as alleged in this action, including their use of the Infringing REIGN Trade Dress, the REIGN® Trademark, and the tagline, "Total Body Fuel," constitutes infringement, misappropriation, and misuse of VPX's BANG® Trade Dress, REIGN® Trademark, and tagline, "Potent Brain and Body Fuel," unfair competition, palming-off and passing-off against VPX, and unjust enrichment of Defendants, all in violation of

VPX's rights at common law and under the law of the State of Florida in accordance with Fla. Stat. § 495.161.

126.    Defendants have engaged in this conduct knowingly, willfully, and in bad faith, justifying the assessment of increased, exemplary, and punitive damages against Defendants, jointly and severally, in an amount to be determined at trial.

127.    Defendants' unlawful and willful conduct has caused and is causing VPX irreparable injury and monetary damages.

128.    Defendants' such conduct has harmed VPX's reputation and goodwill in the BANG® Trade Dress, REIGN® Trademark, and tagline, "Potent Brain and Body Fuel."

129.    Defendants' such conduct has caused and will continue to cause great and irreparable injury to VPX.

130.    Unless Defendants' such conduct is restrained by the Court, it will continue and VPX will continue to suffer great and irreparable injury.

131.    VPX has no adequate remedy at law.

### COUNT V
### Florida Common Law Trademark Infringement
### (Against Both Defendants)

132.    VPX incorporates the allegations in paragraphs 1 through 84 as if fully set forth herein.

133.    Defendants' conduct as alleged in this action constitute false designation of origin, false or misleading descriptions of fact, or false representations of fact, which are likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association with VPX, or origin, sponsorship, or approval of the Infringing REIGN Product by VPX in violation of Florida common law.

134.    Defendants have engaged in this conduct knowingly, willfully, and in bad faith,

justifying the assessment of increased, exemplary, and punitive damages against Defendants, jointly and severally, in an amount to be determined at trial.

135.    Defendants' unlawful and willful conduct has caused and is causing VPX irreparable injury and monetary damages.

136.    Defendants' such conduct has harmed VPX's reputation and goodwill in the REIGN® Trademark.

137.    Defendants' such conduct has caused and will continue to cause great and irreparable injury to VPX.

138.    Unless Defendants' such conduct is restrained by the Court, it will continue and VPX will continue to suffer great and irreparable injury.

139.    VPX has no adequate remedy at law.

**COUNT VI**
**Florida Deceptive and Unfair Trade Practices Act**
**(Against Both Defendants)**

140.    VPX incorporates the allegations in paragraphs 1 through 87 as if fully set forth herein.

141.    Defendants' adoption and use of the Infringing REIGN Trade Dress, the REIGN® Trademark, and the tagline, "Total Body Fuel," have intentionally caused a likelihood of confusion among the public and otherwise constitute deceptive practices in violation of FDUTPA.

142.    At all relevant times, Defendants solicited, advertised, offered, and provided goods and services and, thereby, were engaged in trade or commerce as defined in Fla. Stat. § 501.203.

143.    At all relevant times, VPX was a consumer as defined in Fla. Stat. § 501.203.

144.    Defendants have engaged in this conduct knowingly, willfully, and in bad faith, justifying the assessment of increased, exemplary, and punitive damages against Defendants, jointly and severally, in an amount to be determined at trial.

145.    Defendants' unlawful and willful conduct has caused and is causing VPX irreparable injury and monetary damages.

146.    Defendants' such conduct has harmed VPX's reputation and goodwill in the REIGN® Trademark.

147.    Defendants' such conduct has caused and will continue to cause great and irreparable injury to VPX.

148.    Unless Defendants' such conduct is restrained by the Court, it will continue and VPX will continue to suffer great and irreparable injury.

149.    VPX has no adequate remedy at law.

**PRAYER FOR RELIEF**

VPX prays for a judgment in its favor and against Defendants Monster and Reign Beverage with the following relief:

a.    That Defendants be adjudged to have violated 15 U.S.C. § 1114 by infringing VPX's registered REIGN® trademark by virtue of their use of the REIGN® Trademark;

b.    That Defendants be adjudged to have violated 15 U.S.C. § 1125(a) by infringing the BANG® Trade Dress by virtue of their Infringing REIGN Trade Dress;

c.    That Defendants be adjudged to have violated 15 U.S.C. § 1125(a) by unfairly competing against VPX by using false, deceptive, or misleading statements of fact that misrepresent the nature, quality, and characteristics of the Infringing REIGN Product;

d.    That VPX be awarded damages it has sustained as a consequence of Defendants' conduct under 15 U.S.C. § 1117(a);

e.    That VPX be awarded Defendants' profits obtained by Defendants as a consequence of Defendants' conduct under 15 U.S.C. § 1117(a);

f.      That such damages and profits be trebled and awarded to VPX as a result of Defendants' willful, intentional, and deliberate acts in violation of the Lanham Act, under 15 U.S.C. § 1117;

g.      That all of Defendants' misleading and deceptive materials and products be destroyed as allowed under 15 U.S.C. § 1118;

h.      That the Court adjudge and decree that VPX is the exclusive owner of the REIGN® Trademark associated with all dietary and nutritional supplements and related goods, including beverages, energy drinks, and fitness beverages;

i.      For preliminary and permanent injunctive relief prohibiting Defendants, their distributors, subsidiaries, related companies, or anyone working for, in concert with, or their behalf, from using the Infringing REIGN Trade Dress or any other trade dress confusingly similar to the BANG® Trade Dress in connection with Defendants' products, including any packaging and promotional materials;

j.      For preliminary and permanent injunctive relief prohibiting Defendants, their distributors, subsidiaries, related companies, or anyone working for, in concert with, or their behalf, from using the REIGN® Trademark, the tagline, "Total Body Fuel," or any other term, trade name, trade dress, trademark, or service mark confusingly similar to the REIGN® Trademark in connection with Defendants' products, including any packaging and promotional materials;

k.      For an order requiring Defendants to deliver up for destruction all tangible items bearing the Infringing REIGN Trade Dress, including, without limitation, the following:  labels, packaging, brochures, flyers, advertisements, and signs (and to recall for such purpose any such products and materials in the possession, custody, or control of any other person or entity) and to remove any references to the Infringing REIGN Trade Dress from the Internet and social media outlets such as Facebook, Instagram, Twitter, and Triller;

34

l.      For an order requiring Defendants to deliver up for destruction all tangible items bearing the REIGN® name, including, without limitation, the following: labels, packaging, brochures, flyers, advertisements, and signs (and to recall for such purpose any such products and materials in the possession, custody, or control of any other person or entity) and to remove any references to the REIGN® name from the Internet and social media outlets such as Facebook, Instagram, Twitter, and Triller;

m.      That Defendants be adjudged to have violated FDUTPA, Fla. Stat. §501.201, *et seq.*;

n.      For an order requiring Defendants, under Florida common law, to pay actual and punitive damages upon a proper showing pursuant to Fla. Stat. § 768.72, together with the costs of this action upon a proper showing;

o.      That VPX recover its costs and reasonable attorney's fees incurred in bringing this action, pursuant to 15 U.S.C. § 1117, 35 U.S.C. § 285, and Fla. Stat. § 501.2105, and as otherwise authorized;

p.      That VPX be granted prejudgment and post-judgment interest; and

q.      That VPX have such other and further relief as the Court deems just and proper.


Dated: March 28, 2019                          Respectfully submitted,

/s/ Marc J. Kesten
Marc J. Kesten, Esq.
Florida Bar No. 691801
Marc.Kesten@vpxsports.com

/s/ Francis Massabki
Francis Massabki, Esq.
Florida Bar No. 687901
Frank.Massabki@vpxsports.com

Vital Pharmaceuticals, Inc.
1600 North Park Drive
Weston, FL 33326
Phone: 954-641-0570
Fax:    954-389-6254

and

/s/ Erica W. Stump
Erica W. Stump, Esq. (FBN 0427632)
Erica W. Stump, P.A.
110 E. Broward Blvd., Suite 1700
Fort Lauderdale, FL 33301

*Attorneys for Plaintiff, Vital Pharmaceuticals, Inc.,
d/b/a VPX Sports*